# WASHINGTON ASYLUM

*vs.*

# THE CORPORATION OF WASHINGTON AND WRIGHT'S EXECUTORS.

---

1. A gift *of* the sum of " $20,000 out of the 6 per cent. stock of the corporation of Washington in my name, if so much should remain out of my personal estate, after satisfying all previous bequests," is a specific legacy.
2. The dividends from the pay-day preceding the testator's death pass to the legatee.

January Term, 1848.

APPEAL from the Orphans' Court.

M. Wright, by his will, dated May 15, 1847, after devising parts of his real estate, gave to his three nephews "$500 of the scrip or stock in the Chesapeake and Ohio Canal Company standing in my name; also the stock standing in my name in the Farmers and Mechanics' Bank of Georgetown, said stock being for $2,500; also $1,000 of the stock of the Franklin Insurance Fire Company of Washington standing in my name." He then gave the sum of "$2,000 to A, and $1,500 to B, and $300 to C." All these pecuniary legacies to be paid within three months after his death. Then follows this bequest: "I give and bequeath, after the payment of the foregoing bequests and legacies, unto the mayor, etc., of Washington, in their corporate character and as a body politic, the sum of $20,000 out of the 6 per cent. stock of that corporation standing in my name, if so much should remain, out of my personal estate after satisfying all previous bequests, in trust to the said corporate body and by whatever name it shall at any time be known, to apply the interest thereof to and in aid of supporting

the several now incorporated orphans' asylums in Washington, and in trust that upon the expiration of the time for the redemption of said stock, or any part thereof, the said mayor, etc., for the time being shall by a public act of legislation or by a municipal act re-invest or direct the re-investment of said sum of $20,000, or such part of it as has been or may be redeemed in good and sufficient security, yielding an interest at the rate of 6 per cent. per annum if practicable, so that such interest on said sum of $20,000 may be distributed and continue to be in equal shares to said orphans' asylums that are now incorporated, to the end of their corporate existence; and upon the determination of such corporate existence in or to said asylums then to the said mayor, etc., for the time being for the general purposes of said corporate body of said city, and to increase its general fund forever." He then devises all the residue of his estate to his three nephews in fee, and provides that if his Irish devisees could not take, his executors should sell, and carry the proceeds to the general fund of his assets in their hands, and that a sum equal to the amount of such proceeds of sale shall be taken from his personal property, stocks, and assets and paid by his executors to said devisees." He then declares his estate to be a trust property for the payment of such devisees, and gave all his said property of every kind unto Adams and Trimble in trust (until the real estate shall be conveyed to the several devisees and the pecuniary bequests and stocks are paid or transferred to the legatees), to stand seized for said devisees and legatees and convey and pay and transfer said legacies and real estate to them. Adams and Trimble were appointed executors. The testator died May 23, 1847; the dividends were payable April 1 and July 1.

BRADLEY, for the appellants. The Orphans' Court has decided that the legacy of $20,000 to the corporation is a specific legacy, and that it carried interest from the death of the testator; but that the dividends which accrued

between his death and the next antecedent pay day belonged to his executors. Generally legacies bear interest only from the end of the year, and the rule is not to be extended; but a specific legacy is an exception, and carries all the interest or increase. A bequest of "*my* ten shares of stock" is specific; and the words, "out of stock standing in my name" are equivalent   *   *   *   where it is $1,000 out of my stock." A gift of sheep will pass the lambs; so of a bond, the interest due and to become due.   2 Wm. Exrs., Sec. 6, 876; 2 Vez., Jr., 639*n*; 1 Swanst., 557; Rayburn *vs.* Waite; Ladd *vs.* Ladd, Ala., 1824; 4 Vez., 471*n*.

MORFIT, *contra*.   The executors transferred the stock three months after the death of the testator, and claimed the dividends to July 1.   " The legacy was a pecuniary one, as it was to come *out of* the testator's general personal estate; it was essential to a specific legacy that it should be capable of delivery as a body; and therefore no interest was payable till the end of a year, or only from July 1, or certainly not beyond the testator's death.   2 Wms. Exrs., 880; 2 Vez., Jr., 640; Coleman *vs.* Coleman, 4 Bro. C. R., 347; Simmons *vs.* Vallance, 4 Vez., 573; Innes *vs.* Jonston, 4 Vez., 747; Kirby *vs.* Potter, 7 Jo. C. R., 272; Walton *vs.* Walton, 6 Wheeler A. C. L., 419; 4 Vez., 555; Chaworth *vs.* Buck, 8 Dana, 69; Smith *vs.* Lampton, 3 Dessau., 373; Codgal *vs.* Codgal, 9 Vez., 147; Dean *vs.* Test, 4 Mass., 208, 215; Donner *vs.* Swann, 1 Summer So. Ca.; Sullivan *vs.* Winthrop, 2 Salk., 415; Small *vs.* Dean, 14 Serj. & R., Md., Act 1795, Ch. 101, subchs. 5, 7, 10.   Administrator must retain till expiration of twelve months.

Chief Judge CRANCH delivered the opinion of the Court:

The question is whether this is a specific legacy of the stock, or a pecuniary legacy to be paid in current money out of the assets of the testator's general estate. We think it is a specific legacy of stock to the nominal amount of $20,000. The gift to the nephews is of $500 of the scrip

in the canal company standing in his name; also the stock standing in his name in the Farmers and Mechanics' Bank; also $1,000 of the stock of the insurance company. These three stock legacies are clearly specific legacies. The sum mentioned only indicates the nominal amount of the stock intended to be given. The gift to the corporation of "the sum of $20,000 out of the six per cent. stock standing in my name." This bequest differs from the former stock legacies by using the words "sum of" before the words $20,000. This difference is unimportant. The words "sum of" $20,000 means the same as the words "$20,000." The sum is used as a limitation of the amount of the stock, which should pass by the bequest, if so much should remain. · We are not satisfied with the reasons of the Master of the Rolls in Kirby vs. Potter, 4 Vez., 750. This legacy differs also from the other stock legacies in using the words " out of," viz: " The sum of $20,000 *out of* the six per cent. stock standing in my name if *so much* should remain out of. my personal estate after satisfying all previous bequests." The words "so much" refer to the last noun, *i. e.*, stock. In Kirby vs. Potter, the Master of the Rolls says: "But when the phrase is £1,000 out of my reduced bank annuities the sense is that the executor should raise £1,000 by selling so much of that stock," and he relied much upon the fact that the legacy was to be paid in *one* month from the testator's death; whereas the other pecuniary legacies were not payable until six months afterwards; from which it seems to me the rational conclusion would be directly the contrary. He admits it was a case of doubt. In the present case *all* the pecuniary legacies are made payable in three months after the testator's death; but no time is assigned for the payment of the stock legacies. If this was intended to be a pecuniary legacy the testator would probably have made it payable in three months, as in the case of the others. When he limited the legacy to the amount of 6 per cent.

stock *which might remain,* not exceeding $20,000, it cannot be supposed he intended to make up the deficiency (if any) in money.  Again, the trustees are required to hold it until the stock should be redeemed, and then to re-invest the same in other *6 per cent.* securities, and to apply the interest to the support of the asylums.   It is impossible to execute the trust without considering it a specific legacy.  The trust explains what might otherwise be doubtful.  The money to be re-invested is the proceeds of the redemption of the stock which they will have held from the testator's death to the time of the redemption.  It seems to us, therefore, that it cannot be considered other than a specific legacy; and as such is entitled to all its increase at the time of the testator's death.  The judgment of the Orphans' Court is affirmed as to the character of the legacy; but reversed for refusing to allow the dividends from the last dividend day preceding the death of the testator.